<u>NOT FOR PUBLICATION</u>
**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Malcolm Lewis Brown,** | Civ. No. 13-5392 (RBK) |
| **Plaintiff,** | |
| v. | OPINION |
| **United States of America,** | |
| **Defendant.** | |

**K**UGLER**, U.S.D.J.**

Petitioner, Malcolm Lewis Brown, a federal prisoner, filed this motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Respondent United States of America opposes the petition. (ECF No. 6.) The Court issues the Opinion below based only on the parties' written submissions.

**I. BACKGROUND**

**1. Procedural History**

On September 9, 2013, Petitioner filed a motion pursuant to 28 U.S.C. § 2255 seeking to vacate his sentence. (ECF No. 1.) On September 17, 2013, the Court advised Petitioner of his rights under *U.S. v. Miller*, 197 F.3d 44 (3d Cir. 1999). (ECF No. 2.) Petitioner never responded to the *Miller* order, so on November 1, 2013, the Court ordered an Answer from Respondent. (ECF No. 4.) On January 9, 2014, Respondents filed an Answer with the Court. (ECF No. 6.) The following Opinion results from a consideration of the facts developed on the papers.

**2. Facts**

In April 2011, special agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), acting on information provided by local law enforcement, began an investigation into a home invasion crew operating in Camden and Gloucester Counties. Using a confidential informant who was cooperating with ATF, ATF proposed to members of the crew that the confidential informant knew a disgruntled drug courier who wished to rob his stash house of between 15 and 20 kilograms of cocaine. (ECF No. 6-1 ¶¶ 21-24.) Although the confidential informant proposed the robbery to two of the robbery crew members in a meeting in early May 2011, a third member of the robbery crew (Petitioner's co-defendant Jerome Thomas) responded to the proposal by contacting the confidential informant after speaking with other crew members. (*Id.* ¶¶ 26-38.) The confidential informant then set up a meeting between Thomas and an undercover officer playing the role of the disgruntled drug courier. (*Id.* ¶¶ 41-46.) This meeting took place in a parking lot on May 16, 2011 and at the meeting, the undercover officer and Thomas discussed the proposed robbery of the drug stash house. (*Id.*)

The next day, the undercover officer met with Thomas and Petitioner in a parking lot at the Cherry Hill Mall in Cherry Hill, New Jersey where the three discussed robbing the stash house. (*Id.* ¶¶ 47-51.) Prior to this meeting, the undercover officer had never met, spoken with or contacted Petitioner. At that meeting, Petitioner indicated to the undercover officer that Petitioner knew the group was planning a robbery, but the three again discussed details about conducting a robbery of a drug stash house run by a Mexican drug cartel, guarded by an armed man, and containing between 15 and 20 kilograms of cocaine. (*Id.* ¶ 47.) Petitioner and Thomas also arranged to sell the undercover officer's share of the stolen cocaine. (*Id.* ¶¶ 50-51.) After the two meetings and text message and telephone communications between Thomas and the

undercover officer, on May 25, 2011, Petitioner, Thomas, and Jaffar Muhammad showed up for the "robbery" and were arrested. (*Id*. ¶¶ 157-67.) Petitioner and Muhammad had firearms in their possession, although agents saw Muhammad throw his away as the agents approached. After Petitioner was arrested, law enforcement officers executed a search warrant of the car he drove to meet the undercover officer and found a gun, zip ties, and a mask. All of these items were found in the passenger's seat foot well either in or under a plastic garbage bag. (*Id*. ¶ 67.)

## II. CLAIMS

Petitioner raises the following three issues for Section 2255 review, three of which were raised either at trial or on direct appeal. His claims are stated as follows:

1. ATF unlawfully entrapped Petitioner.[1]

2. The Government "never proved [the] elements of the indictment," thus rendering Petitioner's sentence faulty.

3. Ineffective Assistance of Trial Counsel for failure to object to a defective indictment.

(ECF No. 1 at 5-6.)

## III. DISCUSSION

**1. Standards Governing Petitioner's Claims**

Section 2255 of Title 28, United States Code, provides in relevant part that

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255

---

[1] Petitioner refers to entrapment in both Grounds One and Four of the petition. For clarity and ease of understanding, the Court addresses entrapment as Ground One.

3

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating an ineffective assistance of counsel claim. First, the petitioner must show that, considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id*. at 688; *see also Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). This means that Petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690. Second, Petitioner must affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Additionally, the Third Circuit has "reasoned that 'there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'" *U.S. v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

**2. The Plea Agreement**

    <u>A. Waiver of Right to Collateral Attack</u>

        *i. Knowing and Voluntary*

Petitioner signed a comprehensive plea agreement with the government in this case that included a waiver of the right to file either an appeal or a collateral attack on the sentence. Generally, "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236-37 (3d Cir. 2008) (citations omitted). Additionally,

there is clear precedent validating waivers of basic rights in criminal cases. *United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) (validating waiver of right to appeal when entered into knowingly and voluntarily); *Peretz v. United States*, 501 U.S. 923, 936 (1991) ("The most basic rights of criminal defendants are … subject to waiver."); *Jones v. Barnes*, 463 U.S. 745 (1983) (finding no constitutional guarantee of a right to appeal). Waivers of the right to appeal are generally enforced when they are entered into "knowingly and voluntarily and their enforcement does not work a miscarriage of justice." *Id*. at 562. The Court may look to the plea agreement and plea colloquy to evaluate the knowing and voluntary nature of the waiver. *See United States v. Gwinnett*, 483 F.3d 200, 203-04 (3d Cir. 2007).

Here, Petitioner agreed to plead guilty to two Counts:

**Count One**: Knowingly and intentionally conspiring to distribute and possess with intent to distribute five kilograms of cocaine, 21 U.S.C. 841(a)(1).
**Count Two**: Knowingly and willfully possessing a firearm during and in relation to a drug-trafficking crime, 18 U.S.C. 924(c)(1)(A)(i).

(ECF No. 6-2 at 1.) As part of the plea agreement, the government agreed not to pursue any other criminal charges against Petitioner. (*Id*. at 2.) In exchange, Petitioner agreed to "waive certain rights to file an appeal, collateral attack, writ or motion after sentencing, including . . . a motion under 28 U.S.C. § 2255." (*Id*. at 4.) The plea agreement stipulated that the "applicable guideline range [was] 322 to 387 months" and that a collateral attack could not be filed if the "sentence [fell] within or below the guideline range…." (*Id*. at 9-10.)

During the sentencing hearing, the Court agreed to lower Petitioner's applicable guideline range to 211-287 months due to his cooperation with police, among other factors. Petitioner was ultimately sentenced to a total of "160 months on Count One, and 60 months on Count Two to be served consecutive to Count One which produces a total term of imprisonment of 220 months." (ECF No. 6-3 at 27.) The sentencing court also placed Petitioner on supervised release for a term

5

of five years. (*Id*.) The plea agreement was signed and dated by Petitioner. During the plea colloquy, the following exchange took place:

> Q. But under this paragraph, you agree that you're going to give up or waive that right to file an appeal or file a motion or a writ to attack the sentence under a certain circumstance. And that is, if I do sentence you within or below a guideline range of 322 to 387 months, that is if I give you 387 months or less in your final sentence, you're going to forever give up any right you have to attack the sentence or file a motion or file a writ or an appeal. Do you understand that?
> A. Yes, your Honor.
> Q. So if I do sentence you to 387 months or less, you will be forever stuck with that sentence and you're never going to be able to change it. Do you understand that?
> A. Yes.
> …
> Q. And have you specifically talked to [your attorney] about giving up this very important right of appeal?
> A. Yes.
> Q. And you were satisfied with the information -- advice he gave you about that?
> A. Yes, your Honor.
> Q. And you understand that if I do sentence you to 387 or less, that's it. You're never going to change your sentence. Correct?
> A. Yes, your Honor.

(ECF No. 6-3 at 32-33.)

In response to the court's inquiry as to whether there was any doubt that Petitioner understood the plea, Petitioner said that he fully understood the meaning and effect of the waiver. The Court then found that Petitioner was guilty of all the elements of the crimes changed, was acting voluntarily, fully understood the consequences of the waiver and accepted the plea. (ECF No. 6-3 at 37-42.)

Having scrutinized the colloquy as the Court is required to do when reviewing the enforcement of a waiver, the Court is satisfied that Petitioner was informed of and understood the terms of the plea agreement provision waiving the right to appeal or to collaterally attack the sentence. *Id*. at 238-39 (citing FED.R.CRIM.P. 11(b)(1)(N)). Before the Court accepted the plea agreement, it assured itself that Petitioner had not been coerced or misled in any way into entering into the agreement. The Court explained the waiver at length, Petitioner responded

directly to the court's questions, and defense counsel was permitted to explain further. Because the waiver appears to the Court to be knowing and voluntary, the Court will now address whether enforcing the waiver would result in a miscarriage of justice. *See Mabry*, 536 F.3d at 237-38 (citing *Khattak*, 273 F.3d at 563).

*ii. Miscarriage of Justice*

In determining whether an alleged error would render enforcement of an otherwise valid waiver a miscarriage of justice, the Court must consider: (1) the clarity, gravity and character of the error; (2) the impact of the error on the defendant; (3) the impact of correcting the error on the government; and (4) the extent to which the defendant acquiesced in the result. *See Jones v. United States*, No. 13-3748 (SRC), 2016 WL 81253, at *5 (D.N.J. Jan. 7, 2016) (citing *Mabry*, 536 F.3d at 242-43). First, the Court will address the fourth factor, the extent to which Petitioner acquiesced in the result, as it is easiest to determine. This factor "weighs heavily in favor of upholding the waiver of the § 2255 proceedings." *Id*. As described above, both the documents signed by Petitioner and the plea colloquy with the Court establish full acquiescence with the result. In terms of the other three factors, the second and third factors are "in balance here because if this case were reopened for a new trial both parties would be impacted by the passage of time, the loss of memory, and potential loss of evidence." *Id*. at *6 (citing *United States v. Cannistraro*, 800 F. Supp. 30, 57 (D.N.J. 1992)).

Additionally, this not a case raising allegations that counsel was ineffective or coercive in negotiating the plea agreement that contained the waiver. *See United States v. Wilson*, 429 F.3d 455 (3d Cir.2005) (stating that enforcing a waiver in connection with a coerced plea would work a miscarriage of justice, but then determining, based on the plea colloquy, that the plea was knowing and voluntary). The issues Petitioner seeks to raise on appeal are insubstantial and

clearly encompassed by the broad waiver in that they do not implicate fundamental rights or constitutional principles. *Id*. at 243.

The Court will now address the remaining factor concerning the clarity, gravity and character of the alleged errors of counsel in determining whether enforcing the knowing and voluntary waiver would serve to work a miscarriage of justice on Petitioner.

### a. Ground One – Entrapment

Petitioner argues that enforcing the waiver would result in a miscarriage of justice because he was entrapped by the undercover ATF agent into conspiring to rob the drug stash-house. However, Petitioner offers no evidence of any entrapment.

First, an entrapment defense is not available to a person who is predisposed to commit the crime. *See Stiles v. Balicki*, 2012 WL 395451 (D.N.J. 2012). Here, Petitioner had three predicate offenses involving the distribution of narcotics, meaning that it is likely he was "predisposed" to commit the crimes to which he pled guilty. It is worth noting that Petitioner did not plead guilty to conspiracy to commit Hobbs Act robbery, a charge for which he was indicted that the government did not pursue, likely because such a charge *would* require an entrapment instruction given the information before the Court now. *See United States v. Dennis*, -- F.3d --, 2016 WL 3457652, at *7-8 (3d Cir. 2016) This case is unlike *Dennis* because, there, the robbery at issue was initially proposed by ATF agents, the defendant had no connections to crimes already under investigation, and defendant's criminal history contained no theft or violent offenses. *Id*.

Here, however, Petitioner's criminal history did contain narcotics offenses, and he was a member of a "crew" that was under investigation by the ATF, as opposed to someone with "no known connections to the crimes ATF was investigating [.]" *Id*. at *5. Therefore, given the evidence of predisposition in the record and the lack of rebuttal evidence submitted by Petitioner,

8

the Court finds that enforcing the knowing and voluntary waiver would not result in a miscarriage of justice on the claim of entrapment.

### b. The Government Never Proved the Elements of the Indictment

Second, Petitioner argues that a miscarriage of justice would result because the government never proved the elements of the indictment, namely, the presence of any controlled substance at the alleged stash-house. This argument is without merit. Because Petitioner pled guilty to the charge, the government did not need to prove the elements of the indictment. The following exchange took place at the plea colloquy:

> Q. Count One, the conspiracy to distribute and possess with an intent to distribute cocaine. The Government has to prove that this conspiracy to distribute and possess with intent to distribute this controlled dangerous substance was voluntarily and intentionally formed and existed at or about the time charged. That the type and quantity of the controlled substance was that which was alleged in the information, and that you knew and willfully became a member of this conspiracy. Do you understand that's what they need to prove?
> A. Yes.
> Q. To find you guilty?
> A. Yes.
> …
> Q. At the trial the government would have to prove those elements I just went over beyond a reasonable doubt. But by pleading guilty, you give that up. Do you understand that?
> A. Yes, your Honor.

(ECF No. 6-3 at 34-36.) Petitioner attempts to rely on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), for the proposition that he could be sentenced for intending to possess more than five kilograms of cocaine without a jurying finding so. This argument is legally incorrect. *Alleyne* addressed a situation where that defendant did not plead guilty. Mr. Alleyne maintained his "not guilty" plea and proceeded to jury trial, thus preserving his constitutional rights to have a jury determine whether the elements of the offense were proven beyond a reasonable doubt. *See Garba v. United States*, No. 10-4445 (MLC), 2014 WL 326099, at *3 (D.N.J. Jan. 29, 2014)

9

(citing *Alleyne*, 133 S. Ct. at 2155). Additionally, it is clear from the *Blakely v. Washington*, 542 U.S. 296, 303 (2004), and *United States v. Booker*, 543 U.S. 220, 244 (2005), line of cases and their progeny that if a defendant pleads guilty to the indictment, the elements of the charged offense have been established by his own testimony. *Id*.

Therefore, the Court concludes that Petitioner's sentence, which falls within the applicable guideline range, is proper under *Alleyne* and that Petitioner's guilty plea sufficed to prove the elements of the indictment. Thus, Petitioner's argument is without merit and a miscarriage of justice would not result if the Court enforced the waiver at issue on this ground.

### c. Ineffective Assistance of Trial Counsel for Failing to Challenge Defective Indictment

Lastly, Petitioner argues that he is due habeas relief because his trial counsel was constitutionally ineffective for failing to challenge an indictment that was "defective." Petitioner claims the indictment as defective because he never "possessed" any cocaine, and the government had no "physical evidence" to satisfy this element. (ECF No. 1 at 5.) Petitioner misunderstands the law on this point.

Petitioner was not charged with possession of 5 kilograms of cocaine, but *conspiracy* to possess (with the intent to distribute) 5 kilograms of cocaine. As such, there need not be any "physical evidence" of possession for the crime to be proved beyond a reasonable doubt. *See U.S. v. Vazquez*, 174 F. App'x 700 (3d Cir. 2006) (finding lack of physical evidence of cocaine did not preclude conspiracy conviction). Additionally, here Petitioner knowingly and voluntarily pled guilty to the charge, thereby proving the elements of the crime through his own testimony. *See Blakely*, 542 U.S. at 303. Thus, because the indictment was not "defective," Petitioner's counsel was not ineffective for failing to challenge it. As such, a miscarriage of justice would not result if the waiver at issue were enforced on this ground.

## IV. CONCLUSION

In general, the kind of standard waiver provision in Petitioner's plea agreement has been routinely upheld by this Court and by the Third Circuit. *See Mabry*, 536 F.3d at 238–39; *Wilson*, 429 F.3d at 458; *Gevers v. U.S.,* No. 12–1541, 2015 WL 337468, at *3–5 (D.N.J. Jan.23, 2015). Furthermore, as the Court found above, no errors have been committed by Respondent, so there would be no miscarriage of justice if the waiver is deemed valid and enforceable. As such, the Court will enforce the waiver at issue and reject Petitioner's § 2255 claim for relief. *See Tuytjens v. United States*, No. 13-7597 (MAS), 2015 WL 794575, at *5 (D.N.J. Feb. 25, 2015).

## V. CERTIFICATE OF APPEALABILITY IS DENIED

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local Appellate Rule 22.2. The Court will issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court finds that Petitioner has not demonstrated that "jurists of reason could disagree with the [Court's] resolution of his constitutional claims," therefore the Court will not issue a certification of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

                                                s/Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge

Date:    July 26, 2016